W. W. BROWN et al. v. ELIZABETH WARD et al.*

*Deed, Construction of—The Code,* § 1326, *Election.*

1. A deed of gift, executed in 1790 by W. B. to his son J. B., "during his natural life only, and then to return to the male children of said J. B., lawfully begotten of his body, for the want of such to return to the male children of my other sons W. and B., their proper use, benefit and behoof of him, them and every of them, and to their heirs and assigns forever," with covenants, &c., vested a, life estate in J. B., with remainder in fee to his sons as tenants. in common under the act of 1784 (*The Code,* § 1326).

2. J. B., being such life tenant, devised the lands, with parts of other tracts he owned, to his wife for life, and then to P. B., one of his. seven sons, to be by him "enjoyed during his natural life, without impeachment of waste," and after his death "to the children of my son who may be living at his death, to them and their heirs" *per stirpes,* and P. B. and his mother having taken possession of the lands, conveyed by deed of bargain and sale the land in dispute, with others, to one B. B. in fee with warranty : *Held,* in an action by the children of P. B. against the defendants, who were in possession and claimed through the deed to B. B., that the plaintiffs. were entitled to recover.

3. P. B. having *elected* to take under the will of his father J. B. the full estate for his own life, in the land to which he was entitled to a fractional interest only under the deed of his grandfather, W. B., could not repudiate the will of J. B. in so far as it gave the remainder after his death to his surviving children.

4. When one disposes by will of the absolute right in property in which. he has a limited interest only, he necessarily shows an intention to extinguish all other conflicting adverse rights, whether vested or contingent.

CIVIL ACTION, for recovery of land, tried before *Shepherd,. J.,* at Spring Term, 1888, of the Superior Court of CARTERET.

William Borden being the owner in fee of the tract of land described in the complaint, the possession whereof is

*SHEPHERD, J., did not sit in this case.

demanded in the action, on the 1st day of May, 1790, by deed of gift, conveyed the same, with the other lands, to his son Joseph Borden, Sr, "during his natural life only, and then to return to the male children of the said Joseph Borden, lawfully begotten of his body," with further limitations contingent upon his having such.

The donee for life entered accordingly into possession of the said tract, and held the same until his death in 1825. Two years previous thereto. he made a will, sufficient in form to pass both real and personal estate, which was admitted to probate at March Term, 1825, of the county Court of Carteret. The testator has acquired a large landed estate in Carteret and Hyde counties, besides that obtained under the deed of his father, which he devises in distributive parts, as well as personally, among his children, of whom were living, at the time of his decease, seven sons, William Hall, Thomas R., David W., James W., Joseph J., Benjamin and Isaac Pennington Borden, and a daughter, Mary. His wife Esther also survived him. In one of the clauses of the will the testator devises to his son, Pennington Borden, with other real estate mentioned, to use his own words, "the plantation where I live, between Harlow's Creek and the water fence at Pagnanet's Landing, on New Port River, and running with the fence and boundary described, to my son Joseph, that part next to said creek," this being, as we understand the case agreed, the territory in dispute, which, in the first dispositive clause, is given to his wife Esther for her use during life, and in the latter clause to said Pennington, qualified by the words: "To be by my said son Pennington enjoyed during his natural life, without any impeachment of waste, and after the death of my said son Pennington Borden, *I give the same to the children of my son who may be living at his death* to them and their heirs forever, and if any of the children of my said son should die in his lifetime, having children, such children shall take the share of

lands to which their father or mother would have been entitled, had they have lived, with one ninth of my movable estate."

Pennington Borden and Esther took possession of the lands devised to them in manner aforesaid, and by their deed, bearing date the 25th day of September, 1835, for the recited consideration of $2,500, sold and conveyed the disputed portion of the devised lands and some others to Benjamin Borden, Sr., and his heirs, with warranty of title in fee.

Pennington Borden died intestate on the 25th day of December, 1878, leaving three children, William W. Borden, Emma H. Borden and Anna F. Gewin, who, as plaintiffs, prosecute the present action. Esther, the widow, died on August 19, 1853.

The defendants claim title under the deed to Benjamin Borden, Sr., who, at his death, devised the land to Benjamin F. Borden, by whose deed, dated in 1843, it was conveyed to Rufus Ward, and descended, at the death of the latter, to the defendants, in whose possession, successively, it has been since the execution of the deed of Pennington and Esther in September, 1835.

The present action was begun by the issue of a summons, on October 14, 1884, not quite six years after the death of said Pennington and the vesting in possession of the plaintiffs' claimed estate in remainder, under the will of said Joseph Borden, Sr. The value of the annual rent is, by agreement, fixed at $15, and the foregoing statement of facts is submitted to the Court for an adjudication of the title, to the end that if it rules in favor of the plaintiffs, judgment shall be entered for the recovery thereof, and for damages ascertained as aforesaid, from a period beginning three years before suit, and extending to the trial; and if for the defendants, judgment of nonsuit shall be entered. The Court being of opinion that the plaintiffs were entitled to the

premises, gave judgment accordingly, and the defendants appealed.

No counsel for the plaintiffs.
*Messrs. C. R. Thomas, Jr.,* and *C. M Busbee,* for the defendants.

SMITH, C. J. (after stating the facts). The construction and operation of a deed executed at the same date and by the same original owner, William Borden, Sr., to another son of the donor, bearing his name, and conveying, by gift,. other lands, with essentially similar limitations as that now before us, came before this Court for determination in *Borden* v. *Thomas,* 6 Ired.. 209. The lessor, the son William, donee of a life estate, conveyed the land, as if the owner of an estate in fee, to James Porter, from whom the defendants deduced their title. The lessor was the only son of the donee, William Borden, Jr. The Court held, DANIEL, Judge,. delivering the opinion, that the said William had but an estate during his life, and the estate in remainder vested in his only son, who brought the action in fee, and that he was entitled to recover, the warranty having no other effect than as a covenant, under § 8, ch. 43 of the Revised Statutes, now found in *The Code,* § 1334. The words of inheritance which follow the last limitation to the male children of the sons of Benjamin and Joseph being equally applicable to the male children of said William, enlarged his remainder also into a fee.

The decision determines an interpretation of the deed before us, which gives a life estate only to the said Joseph Borden, Jr., and the estate in remainder, after its termination in fee, to his seven sons as tenants in common, under the act of 1784 (*The Code,* § 1326), the said Pennington being entitled to an undivided seventh part thereof.

The cases are similar in that the life tenants undertake, the one by deed, the other by will, to convey the absolute property in the respective tracts, while they are unlike in that the estate in remainder, in that cited, vested in one, and in our case in several; but the principle involved is common to both, and each endeavored to dispose of land, as his own, when he had but a limited estate in it.

It is true the testator Joseph devises, in terms, a full estate for life, subject to his widow's life estate, to a devisee who had an undivided share therein under his grandfather's deed, but if accepted and acquiesced in by the other tenants, it was a different and enlarged estate, except in duration and time of possession, from that which he could have claimed under the deed had he refused the provisions made for his benefit by the will.

It is a rule of general application that one cannot claim under and against a written instrument, if it undertakes to dispose of his property to others, and gives him property which he would not otherwise have; if he takes the latter, he must surrender his own. This is called an election, and most frequently in testamentary dispositions one is called on to make it, or by his acts is held to have made it, and binds himself thereby.

" It is sufficient to raise a case of election," says STORY, J., " that the testator does dispose of property which is not his own, without any inquiry whether he did so knowing it not to be his own, or whether he did so under the erroneous supposition that it was his own. *If the property was known not to be his own, it would be a clear case of election.*" 2 Eq. Jur., sec. 1093.

Again : " It may be added, that when a party, by his will, disposes of the absolute right in property, in which he has a limited interest only, *he necessarily shows an intention to extinguish all other conflicting adverse rights*, whether they are pres-

ent or future, vested or contingent, and consequently it must be wholly unimportant whether the interests so extinguished are great or small, immediate or remote, valuable or trifling." *Ibid.*, sec. 1096.

In the same direction are our own adjudications—*Sigmon* v. *Hawn*, 87 N. C., 450; *Isler* v. *Isler*, 88 N. C., 576.

The principle, enunciated clearly, takes in the facts of the present case, which show an election to have been made. The testator had full knowledge that his own estate expired with his life, and that he had no further control of the property, which then passed to his sons. Treating it as his own, he makes a distribution of it, with his own large estate, among his children, in a manner he seems to have considered just and fair, and which they seem to have acquiesced in and left undisturbed—the other six, whose shares he gives to Pennington and his mother, making no resistance thereto, content to keep what the will gives them. Pennington, acting in a similar manner, sharing with his mother the full estate for his own life in the land, of which he had a fractional interest only, recognizing the title derived under the will, in selling and conveying the land, with warranty, to the before-named vendee, surely he cannot now be allowed to repudiate the will in so much of it as gives the remainder, after his death, to the plaintiffs, his surviving children. It is manifest that he, as well as the others, so far as appears, has accepted the beneficiary provisions of the will, and, in doing so, surrendered any right under the deed of his grandfather inconsistent therewith, and must, as must those claiming under his deed to Benjamin Borden, abide by his election and take the estate given in the will.

Then, at Pennington's death, terminated his estate in the land, and the remainder vested in possession in the plaintiffs.

There is no error, and the judgment must be affirmed.

No error.                                        Affirmed.